IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AFFINITY FINANCIAL CORPORATION<br>620 Newport Center Drive, Suite 1100<br>Newport Beach, California 92660<br><br>and<br><br>WATERFIELD FINANCIAL SERVICES, INC.<br>620 Newport Center Drive, Suite 1100<br>Newport Beach, California 92660<br><br>     Plaintiffs,<br><br>vs.<br><br>AARP FINANCIAL, INC.<br>2 Highwood Drive, Suite 202<br>Tewksbury, Massachusetts 01876<br><br>     Defendant. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ Case No. _____<br>§ Judge    _____<br>§<br>§<br>§<br>§<br>§<br>§ |

## PETITION FOR CONFIRMATION OF ARBITRATION AWARD AND ENTRY OF JUDGMENT

Plaintiffs, Affinity Financial Corporation, and Waterfield Financial Services, Inc. respectfully move this Court pursuant to 9 U.S.C. §9 to enter (i) an order confirming the American Arbitration Association Award entered on October 27, 2010 in that certain arbitration conducted in accordance with the commercial rules of the American Arbitration Association styled as *Affinity Financial Corporation,* Claimant and Counterclaim Respondent v. *AARP Financial, Inc.,* Respondent and Counterclaim Claimant v. *Waterfield Financial Services, Inc.,*

Counterclaim Respondent, AAA Arbitration No. 16-148-00814-09 (the "Award") against Defendant AARP Financial Inc.[1] As grounds, the Plaintiffs respectfully state as follows:

1.      The Plaintiffs are Affinity Financial Corporation ("AFC") and Waterfield Financial Services, Inc. ("WFS"). AFC is an Indiana corporation with it principal offices located at 620 Newport Center Drive Suite 1100, Newport Beach, California. WFS is an Indiana corporation with its principal offices located at 620 Newport Center Drive Suite 1100, Newport Beach, California.

2.      The Defendant is AARP Financial, Inc. Defendant AARP Financial, Inc.'s principal office is located at Two Highwood Drive, Suite 202, Tewksbury, Massachusetts.

3.      AFC and Defendant entered into that certain Services Agreement dated August 7, 2006 (the "Agreement").[2]

4.      AFC assigned its rights in the Agreement to WFS.

5.      AFC and WFS and the Defendant had disputes arising from the terms of the Agreement that led to the arbitration that took place between the parties

6.      Pursuant to §9.3 of the Agreement, the parties agreed that the arbitration of any dispute would take place in the District of Columbia and that the courts of the District of Columbia would serve as the jurisdiction for the entry of the arbitration award.

7.      The arbitration took place at the offices of AARP's counsel, Pillsbury, Winthrop, Shaw, Pittman, LLP, 2300 N Street, N.W., Washington, D.C.

8.      Venue is appropriate in this Court.

---

[1] A true and correct copy of the Award is attached as Exhibit "A" and incorporated herein by reference.

[2] A true and correct copy of the Agreement (without exhibits and attachments) is attached as Exhibit "B" and incorporated herein by reference.

9. This Court has jurisdiction pursuant to both the Federal Arbitration Act [9 U.S.C. §§1 et. seq.] and the District of Columbia Uniform Arbitration Act [DC St, §§4401 et. seq.].

10. AFC commenced arbitration proceedings against the Defendant on February 11, 2009. Pursuant to the rules of the American Arbitration Association, the Arbitrators were duly selected.[3] AARP never raised any objection to the selected Arbitrators.

11. From July 26, 2010 through July 29, 2010, an evidentiary hearing was held in Washington, D.C. Seven (7) witnesses testified in person and each of the parties introduced written exhibits in the proceeding. The Panel heard evidence for four complete days.

12. AARP was given a full, fair and complete opportunity to present evidence and argument in support of its positions at the evidentiary hearing. AARP never raised any objection otherwise.

13. The parties were represented by counsel during the entire arbitration process, including the merits hearing. AFC and WFS were represented by Paul DeMuro and John D. Clayman of Frederic Dorwart, Lawyers, Old City Hall, 124 East Fourth Street, Tulsa, Oklahoma. Defendant was represented by Jack McKay and Ellen C. Cohen of Pillsbury, Winthrop, Shaw, Pittman, LLP, 2300 N Street, N.W., Washington, D.C.

14. Subsequent to the hearing, the parties filed post-hearing briefs in accordance with the orders of the arbitration panel.

---

[3] AFC and WFS selected the Hon. James McCrery, a former member of the House of Representatives as one of the arbitrators. Defendant chose Paul F. Mickey, Jr., Esq., a member of Steptoe & Johnson, LLP as one of the arbitrators. Mr. McCrery and Mr. Mickey chose the Hon. Fern M. Smith, a retired federal judge from the United States District Court for the Northern District of California, as the neutral and presiding arbitrator.

15. On October 27, 2010, the Arbitration Panel issued its written award which unanimously found in favor of the Plaintiffs.

16. The parties were timely notified of the Award.[4]

17. AARP never raised any objection to the processes or procedures by which the Panel conducted the arbitration process, including the evidentiary hearing.

18. Under governing law, the Plaintiffs are entitled to a confirmation of the Award. D.C. Code §16-4422; 9 U.S.C. §9.

19. Upon judicial confirmation of the Award, the Plaintiffs are entitled to entry of a judgment in conformity with the Award as well as an award of reasonable attorney fees and costs incurred in the course of seeking confirmation, entry and related measures. D.C. Code §16-4425; 9 U.S.C. §13.

WHEREFORE, Plaintiffs Affinity Financial Corporation and Waterfield Financial Services, Inc. pray that the Court enter an order (i) confirming the Award and (ii) entering judgment in conformity with the Award, that the Court award (iii) their attorney's fees and costs arising from this proceeding, (iv) post-judgment interest at the highest rate available and for such other and further relief that this Court deems just and proper.

Respectfully submitted,

Ulka Patel Shriver, Esq., D.C. Bar 480191
NEALON & ASSOCIATES, P.C.
119 North Henry Street
Alexandria, VA 22314
Telephone: (703) 684-5755
Facsimile: (703) 684-0153
Local Counsel for Affinity Financial Corporation and Waterfield Financial Services, Inc

---

[4] See correspondence from Mr. John Germani to John D. Clayman and Jack McKay, Esq./Ellen C. Cohen, dated October 27, 2010, attached as Exhibit "C."

Frederic Dorwart, OBA # 2436
John D. Clayman, OBA # 11790
Paul DeMuro, OBA #17502
FREDERIC DORWART, LAWYERS
Old City Hall
124 East Fourth Street
Tulsa, Oklahoma  74103-5010
(918) 583-9922 (Tel.)
(918) 584-2729 (Fax)

Counsel for Affinity Financial Corporation and Waterfield Financial Services, Inc., Applicants for Admission *pro hac vice*.

|   |   |
|---|---|
| AFFINITY FINANCIAL CORPORATION )<br>    Claimant and Counterclaim Respondent )<br>                   v. )<br>AARP FINANCIAL INC., )<br>    Respondent and Counterclaim Claimant )<br>                   v. )<br>WATERFIELD FINANCIAL SERVICES, )<br>INC. )<br>    Counterclaim Respondent )<br>                    ) | AAA Arbitration No.<br>16 148 00814 09 |

## AWARD OF THE ARBITRATORS

BACKGROUND

This dispute arose from a Services Agreement ("the Agreement") dated August 7, 2006, entered into between Affinity Financial Corporation (Affinity) and AARP Financial Inc. (AARP). Under the terms of the Agreement, Affinity was to provide to AARP members certain "affinity" banking and financial services. Generally, affinity services are services rendered by a contractor in the name of some other entity. The Agreement called for Affinity to manage the provision of banking and financial services under the name of AARP. AARP agreed to assist Affinity through various means, including access to AARP's websites and AARP's member list.

By a November 18, 2008, letter to Waterfield Financial Services, Inc., (Waterfield), successor by assignment to Affinity, AARP gave notice to Waterfield that it was terminating the Agreement pursuant to Section 8.1(d). Waterfield responded that AARP was guilty of bad faith in dealing with Waterfield, already in breach of the terms and requirements of the Agreement, and liable to Waterfield for damages. On February 11, 2009, Waterfield invoked the alternative dispute resolution provisions of the Agreement. On November 2, 2009, Affinity filed a Demand for Arbitration with the AAA demanding equitable and injunctive relief against AARP for improper termination of the Agreement. On December 4, 2009, AARO filed its Answering Statement and asserted various counterclaims seeking declaratory relief that its termination of the Agreement was lawful and requiring the payment of certain outstanding invoices.

Section 9.1 of the Agreement provides for binding arbitration of any dispute arising out of the Agreement or the AARP Financial Savings Center program (as defined through four specific exhibits), by majority vote of a three-member panel, in a proceeding conducted in the District of Columbia under then-current AAA rules.

The Panel was constituted in late 2009 and early 2010. On April 9, 2010, AARP filed a broad motion summary judgment, including a request for a declaration of termination of the Agreement. The motion was based upon supposedly unauthorized transfers of member accounts and customer service responsibilities. The Panel declined to grant AARP's motion and allowed the matter to proceed to a full evidentiary hearing on July 26-29, 2010.

DISCUSSION

The Panel finds this case to be straightforward in some respects and challenging in others. We are unanimous in concluding that as of the time the seizure of Waterfield Bank by OTS occurred, the contract was over. We see no basis for concluding that AFI caused the seizure to occur, and Affinity has failed to show that AFI's post-seizure conduct prevented Affinity from making arrangements for the performance of contractual functions to be restored. Thus we find that Waterfield has failed to show that AFI bears any responsibility for the fact that the contract was terminated by Waterfield's inability to perform as of March 2010 at the latest, i.e. when the Bank was seized; thus, any liability AFI might have to Affinity is circumscribed by that date.

The Panel is less clear on whether Waterfield's failure to provide the full array of services called for by the Services Agreement was attributable to its own non-performance, or, alternatively, whether Waterfield's performance was hampered by AARP's sometimes desultory performance of its responsibilities under the contract. Indeed, upon close examination we believe that both sides bear some responsibility.

The written evidence and hearing testimony revealed several troubling indications that AARP, having signed the Agreement, did not have its heart in consummation of the arrangement it had negotiated. Of particular note was the absence of any written statement by AARP that Affinity was in default of its obligation to proffer proper marketing plans (in a context where other performance issues were amply documented). Even more noteworthy was the Power Point slide from an internal AARP presentation showing that AARP was considering an "early exit" scenario and understood that it might well have to pay $3M to Waterfield as part of a possible early transition of retail banking services to Chase. Leisha Spaulding's testimony tended to confirm AARP's diminished interested in reviewing Affinity's materials and working collaboratively to make the program successful. Further, the Agreement was never formally accepted or endorsed at the higher corporate AARP levels. These and other facts do not in the Panel's judgment rise to the level of a breach of the covenant of good faith and fair dealing, but they do raise a serious question about AARP's compliance with its "best efforts" obligation under the contract.

At the same time, the Panel finds that AARP had legitimate reasons to be concerned about Affinity's compliance with its own contract obligations. The statistics about the level of unapproved transfer of member accounts are ambiguous (27% or 7%, depending upon whether one counts the number of active member accounts or the percentage of funds involved), thus complicating a finding that Affinity transferred a "substantial portion" of the program when it moved member accounts. The substitution of Waterfield Bank as processing bank had a more immediate impact and raises a stronger claim under the contract. When Affinity shifted the processing function from Huntington Bank to Waterfield Bank, thereby reassigning the role of providing checking, money market and other savings deposit products, deposit processing services, ATM, administrative and customer care services, the change had a direct impact on AARP members, requiring the issuance of new ATM/debit cards and PIN numbers, the updating of automatic debits, and changes in statements, among other things. The Panel believes a serious question is raised whether AARP had cause to effect a termination under 8.1(d) when it learned

that account servicing and customer service responsibilities had been transferred from Huntington Bank to Waterfield Bank in late 2008, under a contractual arrangement dated May 23, 2008.

On balance, the Panel concludes that both parties played a significant role in the failure of the Affinity program to develop as contemplated by the Agreement. Because the various failures of the parties to perform their contractual obligations were occurring concurrently, it is difficult to determine a precise point at which one party crossed the line and breached the Agreement when the other party was not in breach. One could readily conclude that each side was in default of its obligations at various points during the life of the contract.

We think the fair result is for Affinity to recover at least some portion of its investment in the AARP affinity program. We do not think that the damages claimed by Affinity are a fair measure of the recovery due, taking into account the serious issues raised about Affinity's performance and the fact that the program terminated prematurely. The sum is excessive, and much of the claimed damages are unavailable given the broad prohibition in the Agreement on recovery of lost profits. Affinity's creative labeling of its damages does not change their character.

The Panel finds that a more appropriate measure is the $1.25M royalty payment which Affinity paid AARP for use of AARP's name, plus some portion of the money expended by Affinity in getting its planned program up and running, in reliance on the contract. Affinity likely derived some benefit from its association with AARP, but surely not the level of benefit it anticipated, due in significant part to AARP's less-than-enthusiastic pursuit of the affinity program. AARP acknowledged early in the life of the Agreement that early termination might warrant payment to Affinity of $3M. Although Affinity claims ongoing investment of funds after that time, its shared responsibility for the program's ultimate lack of success must be taken into account. We find that, considering both the law and the equities, $2.75 M ($2,750.000.00) is a fair assessment of Affinity's reasonable damages. Under the circumstances, it also seems appropriate not to require Affinity to pay AARP $97,021.94, representing outstanding invoices for inclusion of Affinity materials in AARP mailing kits.

AWARD

Based on the analysis set forth above the Panel Awards as follows:

AARP shall pay to Affinity Financial Corp. the amount of $2,750,000.00. Said payment shall be made within 30 days of the date of this Award;

AARP shall take nothing from Affinity Financial or Waterfield Bank;

The administrative fees of the AAA totaling $16,750.00 and the compensation and expenses of Judge Smith totaling $41,210.53 shall be borne equally by the parties. Therefore, Respondent shall reimburse Claimant the sum of $5,625.00 representing that portion of said fees and expenses in excess of the apportioned costs previously incurred by Claimant.

Each side shall be responsible for its own fees and costs.

All claims or issues not specifically addressed in this decision and Final Award are DENIED. This Final Award therefore resolves all claims and counter-claims set forth before this Panel in this proceeding.

SO ORDERED.

Dated: October 25, 2010

_____
Hon. Fern Smith (Ret.)
Chair

_____
James McCrery Esq.
Arbitrator

_____
Paul Mickey
Arbitrator

Each side shall be responsible for its own fees and costs.

All claims or issues not specifically addressed in this decision and Final Award are DENIED. This Final Award therefore resolves all claims and counter-claims set forth before this Panel in this proceeding.

SO ORDERED.

                                              Hon. Fern Smith (Ret.)
                                                              Chair

                                              James McCrery Esq.
                                                              Arbitrator

                                                               Paul Mickey
                                                               Arbitrator

Each side shall be responsible for its own fees and costs.

All claims or issues not specifically addressed in this decision and Final Award are DENIED. This Final Award therefore resolves all claims and counter-claims set forth before this Panel in this proceeding.

SO ORDERED.

_____
Hon. Fern Smith (Ret.)
Chair

_____
James McCrery Esq.
Arbitrator

*Paul Mickey* 10/27/2010
_____
Paul Mickey
Arbitrator